The next matter on our calendar is Figueroa v. the Commissioner of New York State Division of Human Rights. Good morning. Good morning. May I please the court, Andrew Rhys-Davis representing the Commissioner. The district court's judgment should be reversed. The Supreme Court has rejected the union's argument that federal labor law has usurped the entire field of labor management relations. To the contrary, the Supreme Court has told us that because Congress has not expressly preempted state law, there is no preemption in areas that are traditionally left to local law. And as relevant here, the states retain their ability to prohibit unions from engaging in the kinds of abusive conduct that no one should be expected to endure. Haven't all the district courts and the First Circuit essentially read this as being an odd kind of field preemption that is not one which goes to the language of a collective bargaining agreement, but to the essence of a collective bargaining agreement in relation to the duty of fair representation? And admit that this is a bit odd because it doesn't fit in the categories. It doesn't fit in complete preemption. It doesn't fit in the three categories of field preemption. It doesn't fit in conflict. But the third one of field preemption, of whether this interprets the collective bargaining agreement, if we get beyond language, isn't what the First Circuit and what the others say, that that is what is going on and that the duty of fair representation is so important that we should read it that way. What Your Honor is identifying is the error that the district courts have made here. They have taken the First Circuit's language, which was talking about Section 301 of the LMRA, that's claims that depend upon interpretation of the language of a collective bargaining agreement. In that case, it was a collective bargaining agreement that required the union to conduct safety inspections. Yeah, I'm not sure that the First Circuit was so concerned with language as it was concerned with a collective bargaining agreement in general, in a broader sense. Well, Congress has seen fit to go ahead and regulate the substantive law with regard to invidious discrimination, even against unions. Title VII is not exempt from union discrimination, is it? No, Your Honor. It's not preempted by the National Labor Relations Act. So Congress itself has seen fit to interject itself, interject federal concerns with regard to invidious discrimination as it relates to activities of labor unions that may involve, to some degree, aspects of fair representation, but premised upon invidious discrimination. Is that right? That's exactly right. Indeed, Congress has also authorized state agencies to cooperatively work with Congress to enforce those federal provisions. Indeed, in New York, if the New York Division of Human Rights makes a finding of discrimination, and that's affirmed in an Article 78 proceeding in New York courts, that is given preclusive effect with regard to the federal claims, is it not? That is exactly right, Your Honor. I have a hard time understanding, then, how Congress, somehow, this duty of fair representation has been siphoned off into just the jurisdiction of the National Labor Relations Board. Well, it hasn't, Your Honor, and that's exactly our point. There is no preemption absent clear evidence of a congressional intent to preempt. New York's... We know that in terms of federal substantive law, that's not the case. That is absolutely not the case. It hasn't taken the field away from any other federal agency in determining the matter. That's right, Your Honor, and it hasn't done it for state law either. New York's human rights law has prohibited labor unions from engaging in invidious discrimination since 1940, and this is not about regulating labor relations. I mean, this is a statute that was put in place in the wake of race riots in the 1930s, and in light of a legislative committee that reported that portions of the state's minority population were at risk of starvation. So this is core state action to protect the health and welfare of the population. And it's existed together with the NLRA since then, hasn't it? That is exactly right, Your Honor, and Congress has never done anything to indicate any intention to preempt it. Not in 1947 when it amended the federal labor laws to extend to unions, and certainly not in 1963 when it enacted Title VII and applied it to labor unions. And where the record shows that actually Congress was fully aware that New York was applying its anti-discrimination laws to labor unions, and that is, you know, as the Supreme Court has told us, for example, in the Wyeth case, powerful evidence that Congress did not intend to displace state law. And actually what we have here is Congress showing really an all-hands-on-board approach to invidious discrimination. And so against that back... I'm just a little curious. This has been going on a long time. Can you cite any other case in any other circuit or anywhere that has come out the way you would have us come out? I mean, I must say I'm very sympathetic, but I'm a little troubled by the fact that all this time has gone and no one seems to have read it this way. That's just, you know, a little odd, isn't it? Well, I'll say this, Your Honor. No appellate court equally has read it the way that my adversary would like to read it. Not quite, but the First Circuit has read it mighty close, and some others have too. But, Your Honor, I think you have to look at what the First Circuit was actually deciding. Yeah, I don't want to get into whether we could distinguish it. We're not bound by them anyway. That's right. The question is a broader question of why in all this time this argument which you are making, which has appealed to it, has not been picked up. Your Honor, I think it hasn't been litigated either way, and there's been no clear ruling either way. I would point, Your Honors, in response to your question about whether there is any example of a court to the case from the Ninth Circuit in 1985, Carter v. Smith, Food, 765 F. 2nd 916, where the Ninth Circuit in that case did draw a distinction between California common law tort claims based on alleged union discrimination and statutory claims and said that although the common law claims might be preempted by federal labor law, California's anti-discrimination statute was not because it really wasn't trying to regulate collective bargaining, but rather it was just promoting state policy against invidious discrimination. That's the page. So what triggers this declaratory judgment? Well, it's the union. What brings this case to us now? Why was it brought? Well, Your Honor, the union took the position that it was entitled to be immunized from all contact with the Division of Human Rights. It wasn't satisfied with just having a substantive defense to an enforcement action, which is all it has if it's right in this preemption argument, and it insisted upon an injunction that would compel the division to dismiss any claim that did not on its face show that it was unrelated. Did they ask for the injunction first, or did you ask for the declaratory judgment first? They asked for the injunction in their complaint, and then they added a request for a declaratory judgment in their summary judgment motion, and that is— They won the declaratory judgment, didn't get the injunction. That's right, Your Honor. It's the Joint Appendix, page 374, which is where they ask for the declaratory judgment. And if they're right, then the declaratory judgment is sufficient and complete relief. I mean, they are a New York-based union. Their headquarters is visible from this courthouse. They're not entitled to an injunction that prohibits the division from even asking them whether they've done something that's subject to New York law. But it began when they're seeking an injunction to keep you from doing anything and then ask for a declaratory judgment. That's exactly right, Your Honor. We've reserved three minutes for rebuttal. Thank you, Your Honor. We'll hear from the union. Good morning, Your Honors. My name is James Reif. I represent Local 32BJ. I wanted to clarify a couple of points that were urged. First, it's not our contention, never has been our contention, that the entire field of labor-management relations is preempted. This case concerns only the question of when a union acts as a collective bargaining representative, are state law claims challenging the union's conduct in that capacity preempted? That's the sole and much narrower issue. Secondly, we do not claim, and we have never claimed, that the local is immune from any and all contact with the State Division of Human Rights. We have said that they're entitled, if they're genuinely and in good faith, unclear about the scope of an administrative complaint that's filed with them, they're entitled to make an inquiry. Now, there's disagreement about the scope of that inquiry and exactly how the State Division would go about that, but they're entitled to make an inquiry to clarify for their own benefit what's in an administrative complaint. But you argue they're not entitled to rule on that complaint. Is that correct? Well, that's another issue. The State Division seems to think that the only issue here is whether there's preemption from a finding of liability at the end of the administrative process. There is preemption from a finding of liability, but that's not what the case is about. What the case is about is whether the union is going to be required to submit to an enforcement proceeding  Let me ask you, if a member of your union is grieving something and you're representing them and the member of the union concludes that you didn't represent them or you made a choice not to represent them because they were an African American, could they bring a claim against you in the EEOC under federal law? Yes. So Congress made a clear decision to not immunize you from Title VII even though it involved your conduct with regard to fair representation. That's correct. Excuse me. It's not protected and reserved only to the jury. That's substantive law. The second question is, therefore, then it's not reserved only to the National Labor Relations Board to determine that the duty of fair representation has within it an invidious discrimination component. We don't contend that this case involves the question of the jurisdiction of the National Labor Relations Board. How is it that if Congress saw fit to understand that you weren't entitled to have only the NLRB decide the issue of invidious discrimination, but that another federal agency, it saw those rights and those federally protected rights to be separate and independent of your responsibilities of duty of fair representation, how is it that a state agency which has the same responsibility, which has had it for years before the federal government ever decided to protect those rights, how is it that the state agency is preempted by federal law from doing the exact same thing in cooperation with that very federal agency responsible for enforcing those federal rights? How is it? What is it about the duty of representation that prohibits a state from protecting workers from invidious discrimination by their representative? What is it? To go back to Your Honor's initial point about Title VII, the Supreme Court held in Shaw that the anti-preemption clause in Title VII did not extend any further than Title VII itself. In other words, it was not intended to protect state processes beyond Title VII itself. We have interpreted or courts have interpreted and the NLRB has interpreted the duty of fair representation in a way that has been very favorable to the Union. It is hard to bring a claim for a violation of the duty of fair representation. Why in that context shouldn't we read where the Union is accused of doing something which is invidious discrimination, regardless of whether it meets the standards of duty of fair representation, that that is something that can stand? Because whatever reasons within the context of the Labor Relations Act made it be narrow with respect to a violation of the duty of fair representation, why, given the strength of the Title VII and the general law with respect to discrimination, shouldn't we read those laws as being able to stand together and allow this suit? The test for discrimination under the duty of fair representation is not some narrow test. It's the same test for purposes of discrimination as the state human rights law. In other words, if a union intentionally discriminates against a member of the collective bargaining agreement, that's a breach of the duty of fair representation in the same way that it could be a violation of the state human rights law. And that's been true since 1944. Then, if it's the same standard, why do you object to the jurisdiction of the State Division of Human Rights? Because of the way they conduct these proceedings. They are continually asking the union, demanding of the union that it provide extensive discovery in the form of information and documents. That's just the point. That's just the point. That without the Human Rights Commission being able to come in, an individual union member may have a very hard time proving that which you have just told us is something which would be a violation. And if that is so, why should the fact that there's a union there keep what we have in every other context thought to be a sensible way of protecting an individual from discrimination from occurring? Well, I don't think it's any more difficult to go to the National Labor Relations Board and file a charge with the National Labor Relations Board exactly in the same way that someone could file an administrative complaint with the State Division. Let's face it. There is something to be said for federalism. And sometimes the National Labor Relations Board leans one way, and sometimes it leans the other way. We have seen it at times be very anti-union, at times be very pro-union, at times be this, depending on the national administration. And isn't there something to be said when there is an underlying policy which is against discrimination of saying, yeah, if the federal government is willing to go after it, that's good, and if the state is willing to go after it, that's just as good too. The National Labor Relations Board and the federal courts in concerns with private DFR actions have never varied from the position that was adopted by the Supreme Court in 1944, which is this intentional discrimination on the basis of race is a breach of the duty of fair representation. There's absolutely no greater difficulty to go to the board, whoever is on the board. This has been uncontested for years and years as to what the test is for proving a claim of racial discrimination under the duty of fair representation. And let me ask you again, if it's the same standard, why do you object to the State Division of Human Rights having joint jurisdiction? Because of the way they conduct the proceedings, and we think that VACA precludes them from entertaining these proceedings. What do you exactly object to? We object to the numerous and intrusive demands that the union produced discovery and information. Because they're investigating the complaints. Yes, but they don't – some of these same complainants have gone to the NLRB, and some of them have gone to federal court with private DFR claims. And those proceedings, whether they're in federal court or, for that matter, they could be brought in state court, or at the National Labor Relations Board, do not result in these kinds of extensive demands for discovery and information. What's the difference if the party is the EEOC who's asking you for the documents? I'm sorry, I didn't hear you. What's the difference if it's the EEOC who's asking you for the documents? Because there are federal claims. You can be investigated by the feds, and you say, well, it's because Congress – or the Supreme Court in Shaw said that Title VII preempts the field with regard to that. It did in terms of vis-a-vis other matters, but not vis-a-vis the state, and the state setup is very similar. In fact, the EEOC would rely upon the Division of Human Rights in most of the instances to go ahead and investigate it first. But you object this is so intrusive 22 times in how many years? It's up to 25. Oh, how many years? Since June of 2009. Okay, 25 times. Can you speak for a moment before you leave the podium about the different statutes of limitation implied in both of these agencies? Yes. Under the state human rights law, there's a one-year statute of limitations for an administrative claim. There's three-year statute of limitations if it's brought in state Supreme Court as a private action. Under the National Labor Relations Act, there's a six-month limitation if a charge is presented to the National Labor Relations Board, and there's similarly a six-month statute of limitations if a complainant goes to state or federal court and asserts a private DFR claim. That seems like conflict preemption if there was going to be any, not field preemption, correct? Well, that's a complicated question. The Supreme Court in the General Electric case, which we cite in our brief, has a footnote in which it says that you should not draw hard and fast lines between the different kinds of preemption, and it specifically talks about the relationship of field preemption to conflict preemption. I wasn't drawing a hard and fast line. I was asking if this is an example of conflict preemption on the statute of limitation issue. I wouldn't say it's conflict preemption in the sense that that term is commonly used, okay? The way it's commonly used is state law prohibits something, federal law affirmatively guarantees it and protects it. That's the conventional way in which the term conflict preemption is used. There is a way in which field preemption is conflict preemption. As the Supreme Court said in the General Electric case, if Congress intended to bar state regulation in a particular field, then there's a conflict between the state asserting jurisdiction over that field and the congressional intent. So in that sense, the Supreme Court says that's a form of conflict preemption. All right. Thank you very much. We'll hear from Mr. Reisz-Davis, who's reserved three minutes for rebuttal. And could you in your rebuttal address the question of the different statutes of limitation? Yes, Your Honor. Why don't I start with that? There is a six-month statute of limitation for duty of fair representation claims. There is a 12-month statute for human rights law claims. That is not the kind of conflict that would cause the entire statute to be preempted. Right, but it could preempt the statute of limitations. Well, Your Honor, I'd point out that actually a federal anti-discrimination claim has a 300-day statute of limitation in this context when brought in New York, and therefore it's very hard to say that there is some enormous conflict between state and federal interest just because there's a six-month statute applicable to the pure duty of fair representation claim as compared with the human rights law claim. Could they bring before the EEOC a claim of this sort beyond the six months? Yes, the answer is yes. I think the answer is yes, and really that brings me on to the second point I wanted to make in rebuttal. Part of the strong interest the state has here is not simply prohibiting the discrimination, but it's also providing a mechanism, an administrative enforcement mechanism, that facilitates people's ability to actually enforce their rights. That's exactly what the union doesn't want, the administrative procedure. But that's not a basis for preemption, Your Honor. Yes, this really highlights the oddity of the preemption claim. It's not that they're saying that the state is prohibiting them from doing something that they're allowed to do by federal law. They would just prefer to be limited to Well, if you're going to discriminate in the context of fairly representing an individual, that would be a really odd result, wouldn't it? They just want to be limited to federal agencies that have fewer enforcement powers. The EEOC has no enforcement authority as such. The NLRB can't award damages, for example. So what we're going to have if there is no human rights law and no division of human rights is people having to file these things pro se in state or federal court as opposed to having the division appoint a lawyer to present the victim's case before the commission. And my final point, there was a reference. My adversary said that he wasn't trying, through the injunction, to have an injunction that would stop the division from even contacting the union. On page 643 of the record, paragraph 2 of his proposed injunction, it says the State Division of Human Rights shall not require any response or other action by Local 32BJ. So that was exactly what was sought. Unless the court has further questions, I would ask the district court's declaratory judgment be reversed. Thank you very much. Both of you will reserve decision.